**Randall Allen RANKIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 0374–94.

Court of Criminal Appeals of Texas,
En Banc.

April 10, 1996.

Opinion Withdrawing Decision in Part on
Grant of Reconsideration July 8, 1998.

M. Catherine Clarkson, Houston, for appellant.

Julie Klibert, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MEYERS, Judge.

A jury found appellant, Randall Allen Rankin, guilty of aggravated sexual assault and assessed a sentence of fifty years confinement. The evidence at trial indicated that complainant, her sister and three of their friends were swimming and playing at one of their friends' house when appellant offered them a chance to ride on his horse. Appellant took complainant, her sister Wendy and complainant's friend Linda for a ride. Both Linda and Wendy testified that appellant fondled their "privates" during their respective rides. Complainant also testified that appellant had touched her "privates," as well as her breasts. She went on to state that this unsolicited touching culminated in appellant's painful insertion of his finger in her "private."

Appellant, pursuant to Rule 404(b) and Rule 403, objected to both Linda and Wendy's testimony as inadmissible extraneous offense evidence. The trial judge overruled this objection, allowing the testimony. Tex. R.Crim.Evid. 404(b) & Tex.R.Crim.Evid. 403. Appellant then asked the judge to deliver a limiting instruction as to the extraneous offense testimony. The judge declined to give the limiting instruction at that time, but delivered the instruction, instead, at the time of the final jury charge.

The Houston Court of Appeals, Fourteenth Supreme Judicial District, affirmed, concluding that the trial judge properly admitted the extraneous offense testimony to show a common scheme or plan, that the probative value of such evidence outweighed its prejudicial effect, and that the trial judge acted within his discretion when he administered the limiting instruction during the jury charge in-

stead of when the evidence was admitted. *Rankin v. State,* 872 S.W.2d 279 (Tex.App.—Houston 1994). We granted discretionary review to determine whether the Fourteenth Court of Appeals erred in its determinations.

## I.

### A. Rule 404(b)

Rule 401 defines relevancy [1] and Rule 402 states:

> All relevant evidence is admissible, except as otherwise provided by constitution, by statute, by these rules or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible. Tex.R.Crim.Evid. 402.

Pursuant to the above Rule, even when no statute or rule exists barring the admissibility of relevant evidence, a court may deny its admission because of a constitutional impediment. However, when the admission of relevant evidence stands unobstructed by a constitution, statute or rule, then the judge must allow it in.

■ Rule 404(b) exemplifies an exception as contemplated by Rule 402. Rule 404(b) exists, in large part, to counter the possibility that evidence may be admitted to show a defendant's corrupt nature from which the jury may then render a verdict not on the facts of the case before them, but, rather, on their perception of the defendant's character. Goode, Wellborn & Sharlot, *Texas Practice: Texas Rules of Evidence: Civil and Criminal* Sec. 404.2 (1988), at 106. Rule 404(b) reads, in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ...

Under this rule, extraneous evidence introduced solely to show character conformity is inadmissible. But, reading Rule 404(b) in

light of Rule 401 and Rule 402, if evidence 1) is introduced for a purpose other than character conformity, 2) has relevance to a "fact of consequence" in the case and 3) remains free of any other constitutional or statutory prohibitions, it is admissible.

If we view the above sentence as a three part admissibility test, then, as to the first part, this Court has consistently recognized what is apparent from the face of 404(b): "... the Rule's list of 'other purposes' is 'neither exclusive nor collectively exhaustive.'" *Montgomery v. State,* 810 S.W.2d 372, 388 (Tex.Crim.App.1991). As far as we can discern, the second sentence in Rule 404(b) serves no purpose other than an exemplary one and, as is evident in this case, has sometimes been more a source of confusion than guidance.

■ The mere fact that a party introduces evidence for a purpose other than character conformity, or any of the other enumerated purposes in Rule 404(b), does not, in itself, make that evidence admissible. Admissibility of evidence under Rule 404(b), in fact, also hinges on the relevancy of the evidence to a "fact of consequence" in the case. Indeed, when a party makes a 404(b) objection, they are claiming that evidence is being introduced solely for character conformity or, in other words, that the evidence is irrelevant to anything other than character conformity. They need not explicitly state a Rule 402 objection since one is inherent in their Rule 404(b) objection. We find then, consistent with our analysis in *Montgomery,* 810 S.W.2d at 387, that a Rule 404(b) objection demands a relevancy analysis. To find otherwise might result in courts admitting evidence that is both highly prejudicial and irrelevant even after a proper 404(b) objection and despite the existence of Rule 401 and Rule 402. Such a result, we feel, would be absurd and contrary to one of the main purposes of the Rules.

■ When we say that evidence is relevant, we are necessarily saying, pursuant to Rule 402, that the evidence makes a *fact of consequence* in the case more or less likely.

---

1. "Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence. Tex.R.Crim. Evid. 401.

Rule 402, *supra.* As we stated in *Montgomery,* 810 S.W.2d at 387:

> ... a party may introduce ... evidence where it logically serves to 'make ... more probable or less probable' an elemental fact; where it serves 'to make more probable or less probable' an evidentiary fact that inferentially leads to an elemental fact; or where it serves 'to make more probable or less probable' defensive evidence that undermines an elemental fact.

Under *Montgomery,* then, it appears that "fact of consequence" includes either an elemental fact or an evidentiary fact from which an elemental fact can be inferred. An evidentiary fact that stands wholly unconnected to an elemental fact, however, is not a "fact of consequence." A court that articulates the relevancy of evidence to an evidentiary fact but does not, in any way, draw the inference to an elemental fact has not completed the necessary relevancy inquiry because it has not shown how the evidence makes a "fact of consequence" in the case more or less likely.

■ In this case, the court of appeals latched onto the phrase "common scheme or plan," and held the evidence admissible because it was being introduced for the purpose of showing that plan. Introducing evidence for a purpose other than character conformity does not, somehow, make that evidence magically admissible. The question of whether evidence should be admitted after a 404(b) objection necessitates a relevancy inquiry. Following the court of appeals' analysis, the relevancy inquiry here would have been: 1) Does this evidence make the existence of a "common scheme or plan" more or less likely? and 2) Can we infer an elemental fact from the existence of a plan? This kind of relevancy inquiry is complicated and entirely unnecessary. Here, the court needed only to ask if the extraneous offense testimony was relevant to any fact of consequence in the case other than character conformity. The trial court, for example, could have admitted Linda and Wendy's testimony as evidence relevant to show appellant's intent.

Testimony that the appellant sexually molested two girls just before he molested the complainant makes it more likely that appellant did not act accidentally, but with intent. In fact, it appears, as appellant deftly points out in his brief, that "common scheme or plan [was] only a theory for the prosecution to bridge the gap between the act and the intent so that the State [could] attempt to show that a defendant acted with a culpable mental state." Brief for Appellant at 11, *Rankin v. State,* 872 S.W.2d 279 (Tex.App.— Houston 1994, PDR granted). The court of appeals, however, failed to bridge that gap.

Instead of focusing on how the evidence was relevant to show a fact of consequence in this case, the court of appeals attempted to show how the evidence tended to show a common scheme or plan.[2] Furthermore, the court did not attempt to show how the existence of a plan related to intent or any other fact of consequence in the case. Of course, it is not up to this court to make findings as to the relevancy of this evidence in the first instance. Because the court of appeals has not conducted a complete relevancy analysis, we remand this case to them so that they may make a determination on this issue.

## B. Rule 403

Rule 403 is yet another exception to the general rule of admissibility under 402. Rule 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Tex.R.Crim.Evid. 403.

Rule 403 acts as a further check on the admissibility of evidence. In other words, even though extraneous evidence meets all the requirements for admissibility under 404(b), the trial court may disallow it as excessively prejudicial. The court is not required to prohibit such evidence. The court must, however, engage in the balancing test

---

**2.** The court of appeals' analysis on this point falls short. The evidence showing extraneous offenses is no more indicative of a plan than of the possibility that the appellant did not know what was going to happen when he brought the horse over to the girls, but, instead, formed the intent to molest each girl separately.

of Rule 403 if a proper Rule 403 objection is made. *Montgomery*, 810 S.W.2d at 388.

The court of appeals here found the 403 objection preserved and they addressed the merits of that issue, finding that the probative value of the extraneous offense testimony outweighed its prejudicial effect. *Rankin*, 872 S.W.2d at 283. The appellant then, on appeal to this Court, objected to the Court of Appeals' use of the extraneous offense testimony. Although we should not reverse a determination that results from a properly conducted Rule 403 balancing test merely because we disagree with the result, it is proper to reverse a lower court's decision when the test they have employed is incorrect or incomplete. *Arcila v. State*, 834 S.W.2d 357, 361 (Tex.Crim.App.1992). In *Arcila*, this Court determined that it ought not reverse the lower court's Rule 403 determination, noting that the Dallas Court of Appeals' opinion "... evaluates [the] issues according to settled rules of law, accounts for all evidence relevant to the questions presented, and reaches a conclusion adequately supported by the law and the evidence." *Id.* In this case, however, the Court of Appeals conclusively stated, "[w]e have reviewed the evidence, and find that the trial court did not abuse its discretion in admitting the extraneous acts." *Rankin*, 872 S.W.2d at 283. The court failed to detail the evidence it used in arriving at its conclusion. In fact, it is difficult to find much Rule 403 analysis at all in the five sentences the Court of Appeals dedicated to that question. Although the Court of Appeals properly recognized that, when conducting a Rule 403 balancing test, the "probativeness" of the evidence "is the weightier consideration," the court failed to discuss the factors necessary for a comprehensive Rule 403 analysis. *Rankin*, 872 S.W.2d at 283. As this Court has previously stated, and we now reiterate, a complete Rule 403 balancing test demands an inquiry as to all the factors set out in *Montgomery*, 810 S.W.2d at 389–90, 392–93. Their job, however, does not end there. They must also, consistent with *Arcila*, fully account for all the evidence relevant to their 403 analysis.

Although the decisions of the Texas Supreme Court in no way bind us, the above holding comports with that court's holding in *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986), where it required that the court of appeals fully articulate both the evidence and reasoning behind their decision to reverse the verdict on insufficiency grounds. That court found that such an explanation creates a basis on which to determine whether the lower court employed the correct standard in coming to their decision. *See also Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 652–53 (Tex.1988). Likewise, we hold that courts of appeals must fully explain their Rule 403 determinations, detailing both the evidence and reasoning used to arrive at those decisions, else we may be unable to discern whether the correct test was used in reaching any given result.

Appellant's first ground of review is therefore sustained and, in conjunction with our disposition of appellant's second ground of review, we remand this case to the court of appeals for an analysis consistent with our holdings.

## II.

Our second ground of review involves Tex. R.Crim.Evid. 105(a) which states, in pertinent part:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly ...

The question in this case does not go to the duty of the trial judge to give a limiting instruction, but, rather, to the timing of the instruction. Appellant argues that Rule 105(a) mandated a limiting instruction at the time the extraneous offense testimony came into evidence and that the court of appeals erred in affirming the trial court's decision to administer the limiting instruction at the jury charge. The state urges that the timing of the limiting instruction is discretionary upon the trial judge. We feel that the appellant has the better of these two arguments.

The language of Rule 105(a) does not address the temporal aspect of when limiting instructions should be given, but, rather, sets out the circumstances under which an instruction must be given. Tex. R.Crim.Evid. 105(a). However, in analyzing the dispute before us today, we assume that the spirit of the rule and the contemplation of the rule-makers includes two separate notions: First, that limiting instructions actually curb the improper use of evidence and, second, that the rule should act in a way that not only "restrict[s] the evidence to its proper scope", but does so as effectively as possible. Tex.R.Crim.Evid. 105(a). Working under these notions, logic demands that the instruction be given at the first opportunity. If limiting instructions impede the improper use of evidence, then an instruction given when the evidence is admitted limits that evidence to its proper scope immediately. An instruction given for the first time during the jury charge necessarily leaves a window of time in which the jury can contemplate the evidence in an inappropriate manner. For example, as in this case, if the State offered evidence to show that a defendant accused of child molestation had previously molested two other young girls, then that evidence may properly be considered to show intent to molest the complainant. However, jurors may also improperly use that evidence to form a negative opinion of the defendant prior to receiving limiting instructions from the judge. Jurors cannot be expected to know exactly how to use the evidence unless we tell them, nor can we guarantee that they will "remain open-minded until the presentation of all of the evidence and instructions ..." See Morrison v. State, 845 S.W.2d 882, 887 (Tex.Crim.App.1992). Additionally, we cannot tell how jurors have used the admitted evidence. Thus, the possibility exists that, unless we instruct the jury on evidence concurrently with its admittance, jurors may, unbeknownst to us, use that evidence improperly by forming an indelible perception

of the defendant that will work unfairly to his inevitable detriment. As deftly stated by Professors Wright and Graham:

> The purpose of ... midtrial limiting instructions is to insure that the jurors realize the proper use of each bit of evidence as it comes in. Where the jurors have been accumulating their impressions of the evidence over the course of the trial, it is impossible for them to go back at the close of the trial and reassess the evidence in light of the limiting instruction, even if they could appreciate which items of evidence the instruction was supposed to apply to. These difficulties are avoided by instructions at the time of introduction of evidence received for a limited purpose. 21 *Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure, Evidence* § 5065.

Limiting instructions given for the first time during the jury charge thus do not constitute an efficacious application of Rule 105(a) since it allows for the possibility that evidence will be used improperly in clear contravention to the purpose of the rule. Since limiting instructions operate most effectively when given simultaneously with the relevant evidence, it would not do to grant trial courts "discretion" to deliver those instructions, after they had been properly requested, at a less opportune time.

Additionally, the trend among state courts favors limiting instructions concomitant with the admission of evidence. In *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516, 528 (1994), the Supreme Court of Appeals of West Virginia, reversing a first degree murder conviction and addressing Rule 404(b) evidence, stated not only that a limiting instruction "should be given at the time the evidence is offered," but went on to "recommend that it be repeated in the trial court's general charge to the jury at the conclusion of evidence."[3] *See also, State v. McGhee*, 193

---

3. Although not before us today, Tex.Crim.Proc. Code Ann. art. 36.14 would seem to require limiting instructions in the jury charge. That statute states, in pertinent part:

"... in each felony case and in each misdemeanor case tried in a court of record, the judge shall, before the argument begins, deliv-

er to the jury, except in pleas of guilty, where a jury has been waived, a written charge distinctly setting forth the law applicable to the case;"

Thus, pursuant both to our ruling today and to art. 36.14, jury instructions, if requested, should

W.Va. 164, 455 S.E.2d 533, 539 (1995); *Jupiter Inlet Corp. v. Brocard,* 546 So.2d 1, 3 (Fla.App. 4 Dist.1988), *rev. denied,* 551 So.2d 461 (1989) (holding that the trial judge had to administer a contemporaneous limiting instruction when an Occupational Safety Hazard Act regulation was admitted into evidence); *Yukon Equipment, Inc. v. Gordon,* 660 P.2d 428, 435–36 (Alaska 1983), *overruled on other grounds by Williford v. L .J. Carr Investments, Inc.,* 783 P.2d 235 (Alaska 1989) (stating that it "is important that a limiting instruction be given simultaneously" when hearsay evidence entered). In *Commonwealth v. Covil,* 474 Pa. 375, 378 A.2d 841, 845 (1977), the court left the timing of the limiting instruction to the discretion of the trial judge. The court, however, emphasized that "it is better to give the limiting instruction at the time the evidence is admitted." *Id.*

In fact, the Tenth Circuit, recognizing some of these detrimental effects, has stated:

> If evidence is admitted solely under the authority of Rule 404(b), the court must give a limiting instruction both at the time the evidence is admitted and in the general charge to minimize the danger that the jury might use the evidence as proof that the defendant acted in conformity with his past acts on the occasion for which he is being tried. *U.S. v. Rivera,* 837 F.2d 906, 913 (1988). *But see, U.S. v. Grageda–Chavez, U.S. v. Barajas–Cardenas,* 927 F.2d 611 (1991) (In an unpublished opinion, the Ninth Circuit declined to adopt the "strict rule" of *Rivera* ).

Fed.R.Evid. 404(b), like Tex.R.Crim.Evid. 404(b), provides a mechanism for allowing the admission of extraneous offense evidence not introduced to show character conformity.

Both the Seventh and Fifth Circuits have indicated that limiting instructions may be given when evidence is admitted or at the jury charge. *U.S. v. Annoreno,* 460 F.2d 1303, 1307–08 (7th Cir.1972), *cert. denied,* 409 U.S. 852, 93 S.Ct. 64, 34 L.Ed.2d 95 (1972). *United States v. Allen,* 468 F.2d 612, 613 (5th Cir.1972), *cert. denied,* 410 U.S. 935, 93 S.Ct. 1389, 35 L.Ed.2d 599 (1973). But the Fifth Circuit, in *Lubbock Feed Lots, Inc. v. Iowa Beef Processors,* 630 F.2d 250, 266 (1980), *reh'g denied,* 634 F.2d 1355 (5th Cir.1980), noted that, pursuant to Fed.R.Evid. 105, although limiting instructions may be requested and received at the end of a trial, they are "generally more *effective* at the time the evidence is presented ..." *Id* (emphasis added).

In the case at hand, appellant requested a limiting instruction *not* at the end of the trial, as in *Lubbock Feed Lots,* but at the time the trial court admitted the extraneous offense testimony into evidence. The trial judge denied this request, deferring the limiting instruction until the jury charge. Because we have determined that Tex.R.Crim.Evid. 105 requires a limiting instruction, upon proper request, when evidence is admitted and because we see no reason not to adopt the "better" and most effective application of Rule 105(a), we hold that the court of appeals erred in affirming the trial court's decision to defer the limiting instruction until the jury charge. Having held the court of appeals in error, we remand this case to them so that they may determine whether such error is subject to an harmless error analysis under Tex.R.App.P. 81(b)(2), and, if so, whether the error is harmless in fact.

### III.

We therefore remand this case to the court of appeals for the reconsideration of the following issues: Whether the extraneous offense testimony is relevant to a fact of consequence in this case. *See* Part IA. If the court of appeals finds it is, it should proceed to an analysis of whether it nevertheless should have been excluded under the balancing test of Rule 403, and articulate the application of that test to the facts of this case in its opinion. *See* Part IB. If the court of appeals finds the evidence inadmissible, it should proceed to an harm analysis under Tex.R.App.P. 81(b)(2). Should the court find the evidence admissible, it should then proceed to decide whether the error in failing to give a timely limiting instruction is subject to an harmless error analysis, and, if so, whether it is harmless. *See* Part II.

be given when the evidence is admitted and then again at the final jury charge.

The judgment of the court of appeals is vacated and the cause is remanded for that court to address as many of these issues as is necessary for the disposition of this case in a manner not inconsistent with this opinion.

MANSFIELD J., dissents.

McCORMICK, Presiding Judge, dissenting.

I dissent. If by its opinion the majority intends to change how appellate courts have traditionally reviewed trial courts' evidentiary rulings, then they should honestly say so.

The law still is that the decision regarding admissibility of evidence is within the trial court's sound discretion and should not be set aside absent a showing of an abuse of discretion. See *Joiner v. State*, 825 S.W.2d 701, 708 (Tex.Cr.App.1992), cert. denied, 509 U.S. 925, 113 S.Ct. 3044, 125 L.Ed.2d 729 (1993). What this usually means is that a trial court's evidentiary ruling should be upheld if it is "within the zone of reasonable disagreement." See *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Cr.App.1990) (op. on reh'g). The mere fact that a correct ruling is given for the wrong reason should not result in a reversal; a trial court's evidentiary ruling should not be disturbed on appeal if it is correct on any theory of law applicable to the case. See *Jones v. State*, 833 S.W.2d 118, 125 (Tex.Cr.App.1992), cert. denied, 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993). The applicable standard of review is abuse of discretion, not a *de novo* standard of review. See *Montgomery*, 810 S.W.2d at 392.

*Rule 404(b)*

The majority holds a Tex.R.Crim.Evid. 404(b) objection "demands a [Tex.R.Crim. Evid. 402] relevancy analysis." However, when a defendant, as the appellant did in this case, objects to the testimony as "inadmissible extraneous offense evidence" and the appellate court, as the Court of Appeals did in this case, holds the evidence admissible because "it was being introduced for the purpose of showing a scheme or plan," then the appellate court has ruled on the extent of the defendant's objection and the analysis should

end. I would hold that a defendant has to object that "the extraneous offense testimony [is not] relevant to any fact of consequence in the case other than character conformity" to demand the type of relevancy inquiry the majority says the Court of Appeals did not do in this case. See *Montgomery*, 810 S.W.2d at 391.

And, since appellant did not make a proper Rule 402 objection, I would further hold the Court of Appeals did not err to uphold the trial court's ruling. And, in any event, the majority strongly intimates the objectionable evidence was relevant to appellant's intent, which causes me to wonder why the majority decides to waste judicial resources by remanding this case to the Court of Appeals to conduct a "complete relevancy analysis." Cf. *Jones*, 833 S.W.2d at 125.

Procedurally, the majority addresses an issue that was not fairly raised as a ground for review in appellant's petition for discretionary review. Appellant's petition for discretionary review presents the following ground:

> "Do extraneous offenses between appellant and third parties become automatically admissible on the basis of common scheme or plan?"

Substantively, appellant's petition for discretionary review does not really complain about the Court of Appeals' "relevancy analysis." His main complaint is that the Court of Appeals' got it wrong because it was unfair to allow the introduction of the extraneous offenses "when the act itself is such that only a culpable mental state can reasonably be inferred from the act." Appellant further claimed "[T]he question before the jury should have been whether it believed [the victim's] testimony from the act ..."[1] What appellant's complaint essentially boils down to is he lost in the trial court, he lost in the Court of Appeals, and now he wants to win in this Court. This Court routinely refuses petitions for discretionary review with grounds like the one here.

1. The reader may recall that appellant testified at trial and claimed he committed no offense.

*Rule 403*

Appellant's petition for discretionary review contains no grounds complaining about the Court of Appeals' Rule 403 analysis, and the parties have not briefed this issue. See *Cornealius v. State*, 900 S.W.2d 731, 735 (Tex.Cr.App.1995) (Baird, J., dissenting) (to reach an issue that has not been raised, briefed or argued by the parties is patently unfair). Therefore, I would not even be addressing the Rule 403 issue in this case.

But since the majority does, I have to disagree with their analysis. Again, if the majority intends to change the law, then they should say so. I am not aware of any of this Court's prior cases that require intermediate appellate courts to "fully account for all the evidence relevant to their 403 analysis."

The majority apparently relies on *Montgomery* as support for this proposition. However, *Montgomery* only sets out some relevant factors for trial courts and appellate courts to consider when analyzing Rule 403 issues. See *Montgomery*, 810 S.W.2d at 389–90, 392–93. *Montgomery* does not mandate that appellate courts "fully account for all the evidence relevant to their 403 analysis."

What we also learn from the majority is that they continue to be enamored with how things are done on the civil side, because they rely on civil cases for their holding that the intermediate appellate courts should "fully account for all the evidence relevant to their 403 analysis." See *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 652–53 (Tex. 1988); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); see also *Clewis v. State*, 922 S.W.2d 126 (Tex.Cr.App.1996) (harmonizing the criminal and the civil side with respect to appellate review of sufficiency issues) (mot. for extension of time to file mot. for reh'g granted). However, these civil cases require an intermediate appellate court to "fully account" only when it reverses a *jury verdict* in a civil case on "factual" insufficiency grounds. See *Cropper*, 754 S.W.2d at 652. These cases have no application to how appellate courts analyze Rule 403 issues on the civil side and they cannot be read to support what the majority does here.

And, conspicuously absent from the majority opinion is any discussion about how the civil side analyzes Rule 403 issues. I am not aware of any civil cases that require appellate courts to "fully account for all the evidence relevant to their 403 analysis." Here, the majority abandons any pretense of harmonizing the civil side and the criminal side, which was one of the main rationales a majority of this Court offered for its recent decision in *Clewis*.

When, as in this case, the intermediate appellate courts state they "have reviewed the evidence, and find that the trial court did not abuse its discretion in admitting the extraneous acts," we should presume they have considered the appropriate factors set out in *Montgomery*. Under such circumstances, this Court should be prepared to demonstrate how the intermediate appellate courts have misapplied *Montgomery* instead of remanding cases to already overworked intermediate appellate courts to "fully account," which in most cases will reach the same result they did before. This seems to be an incredible waste of time and judicial resources.

*Rule 105(a)*

This brings us to Tex.R.Crim.Evid. 105(a), which, in relevant part, states:

"When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, *shall restrict the evidence to its proper scope and instruct the jury accordingly ...*" (Emphasis Supplied).

The "plain" language of Rule 105(a) is silent on the timing of a Rule 105(a) limiting instruction, and I know of no rule of statutory construction permitting the judiciary to rewrite a rule when it is silent on a particular matter. See *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr.App.1991). The majority changes the "plain" meaning of Rule 105(a) by legislating a requirement into the rule that "plainly" is not there. I would hold, consistent with the "plain" language of Rule 105(a), that the timing of a Rule 105(a) limiting instruction is within the trial court's discretion and should not be set aside absent a showing of an abuse of discretion. Such a

holding would provide trial courts with discretion to defer the giving of a Rule 105(a) limiting instruction in those situations where that would be the "better" approach. The majority's "ivory tower" interpretation of Rule 105(a) fails to accomplish this. Trial courts, and not this Court, are in the best position to make the call on when to give a Rule 105(a) limiting instruction.

The majority opinion states, "[B]ecause we have determined that Tex.R.Crim.Evid. 105 requires a limiting instruction, upon proper request, when evidence is admitted and because *we see* no reason not to adopt the *'better'* and most effective application of Rule 105(a), we hold that the court of appeals erred in affirming the trial court's decision to defer the limiting instruction until the jury charge." (Emphasis Supplied). The majority ignores the "plain" language of Rule 105(a) and merely adopts what "they believe" is a "better" rule. I have in the past criticized this kind of result-oriented, lawless decision-making. See, e.g., *Bauder v. State*, 921 S.W.2d 696 (Tex.Cr.App.1996) (McCormick, P.J., dissenting) (mot. for reh'g pending); *Autran v. State*, 887 S.W.2d 31, 43–49 (Tex.Cr.App.1994) (McCormick, P.J., dissenting).

The majority relies mostly on out-of-state cases and one federal case for their holding. See *U.S. v. Rivera*, 837 F.2d 906, 913 (10th Cir.1988); *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516, 528 (1994); *Yukon Equipment, Inc. v. Gordon*, 660 P.2d 428, 435–36 (Alaska 1983), overruled on other grounds, *Williford v. L.J. Carr Investments, Inc.*, 783 P.2d 235 (Alaska 1989); *Jupiter Inlet Corp. v. Brocard*, 546 So.2d 1, 3 (Fla.App. 4 Dist. 1988), rev. denied, 551 So.2d 461 (Fla.1989). However, the majority also cites one out-of-state case and three federal cases that do not support its holding. See *Lubbock Feed Lots, Inc. v. Iowa Beef Processors*, 630 F.2d 250, 266 (5th Cir.1980); *U.S. v. Allen*, 468 F.2d 612, 613 (5th Cir.1972), cert. denied, 410 U.S. 935, 93 S.Ct. 1389, 35 L.Ed.2d 599 (1973); *U.S. v. Annoreno*, 460 F.2d 1303, 1307–08 (7th Cir.), cert. denied, 409 U.S. 852, 93 S.Ct. 64, 34 L.Ed.2d 95 (1972); *Commonwealth v. Covil*, 474 Pa. 375, 378 A.2d 841, 845 (1977) (ultimately leaving the timing of a limiting

instruction within the discretion of the trial court). I would not characterize the majority's holding as being supported by the overwhelming weight of authority from other jurisdictions. And, I do not really see what out-of-state and federal cases have to do with interpreting one of our own rules of criminal evidence.

The majority's interpretation of Rule 105(a) also fails to take into account those situations where the "better" approach would be for the trial court to defer the giving of a limiting instruction. For example, *Covil*, which is cited in the majority opinion, illustrates the practical advantages of leaving timing of the Rule 105(a) limiting instruction within the trial court's discretion. See *Covil*, 378 A.2d at 845 (giving of the limiting instruction *when* the evidence was admitted may have been misleading because "to try to explain the exact purpose for which the evidence was admitted before the rest of the evidence was presented might have been unfair" to the State or to the defendant). Sometimes, the "better" approach is for the trial court to defer the giving of the limiting instruction. See *id.* Most of the other cases cited in the majority opinion echo this view as well.

Also, under the majority's interpretation of Rule 105(a), if a defendant does not timely request a limiting instruction "when the evidence is admitted," then the trial court has no obligation to limit the evidence in the jury charge. The majority addresses this issue in footnote three of its opinion by advising us that Article 36.14, V.A.C.C.P., would require, upon the defendant's request, the giving of the limiting instruction in the jury charge even if the defendant did not request a limiting instruction "when the evidence was admitted." However, Article 36 .14 would *not* require the giving of a limiting instruction in the jury charge because, if the defendant does not properly request one "when the evidence is admitted," then the evidence is admitted "without limitation." See Rule 105(a) (where defendant does not timely request a limiting instruction when the evidence is admitted, the trial court's action in admitting the evidence without limitation shall not be a ground for complaint on ap-

peal). There would be nothing to limit in the jury charge.

In addition, making it discretionary with the trial court on the timing of a Rule 105(a) limiting instruction has traditionally been the practice in many courts across this State, so the majority's opinion will have practical implications for some cases that already have been tried and for some cases presently on appeal. See *Thompson v. State,* 752 S.W.2d 12, 14 (Tex.App.—Dallas 1988), pet. dism'd, 795 S.W.2d 177 (Tex.Cr.App.1990). If the majority wants to amend the "plain" language of Rule 105(a) to require the "better" approach they mandate here, they should amend the Rules and not do so by judicial fiat. This would be an easy case if the majority was inclined to follow the law and give effect to the "plain" language of Rule 105(a).

Finally, the majority remands this case to the Court of Appeals so it may, among other things, "determine whether such error is subject to an harmless error analysis." Tex. R.App.Proc. 81(b)(2). It is fair to point out that none of the out-of-state cases relied upon by the majority hold that such an error is not subject to a harmless error analysis. And, the cases I have reviewed would seem to support saying that a trial court's failure to comply with Rule 105(a) is easily subject to a Rule 81(b)(2) harmless error analysis. See, e.g ., *Huddleston v. U.S.,* 485 U.S. 681, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988); *U.S. v. Brawner,* 32 F.3d 602, 605–07 (D.C.Cir.1994) (Ginsburg, J.); overruled in part, *U.S. v. Rhodes,* 62 F.3d 1449 (D.C.Cir. 1995); *U.S. v. Bruner,* 657 F.2d 1278, 1285–86 (D.C.Cir.1981); *Lubbock Feed Lots, Inc.,* 630 F.2d at 266 (holding the admission of evidence that was not properly limited was harmless); *Covil,* 378 A.2d at 845–46. The latter two cases are cited in the majority opinion. When the Rule 81(b)(2) harmless error issue comes before this Court, it will be interesting to see whether the majority will be as willing to rely on these cases then as they have been willing to rely on them now.

I respectfully dissent.

WHITE and KELLER, JJ., join this dissent

## OPINION ON STATE'S MOTION FOR REHEARING

HOLLAND, Judge, delivered the opinion of the Court, in which BAIRD, OVERSTREET, MEYERS and PRICE, Judges, joined.

On motion for rehearing, the State contends that the court of appeals addressed the relevancy of the extraneous offense evidence demonstrating a common scheme or plan. The State also asks us to reconsider part IB of our original opinion because we addressed Rule 403 without requesting that the parties brief the issue.[1] We granted rehearing to reconsider our resolution of these issues.[2] This supplemental opinion supports part IA of our original opinion and withdraws part IB of that opinion.

### I.

After issuing our opinion on original submission, this Court delivered *Guzman v. State,* 955 S.W.2d 85 (Tex.Crim.App.1997). *Guzman* affirmed the long-standing rule that "appellate courts should show almost total deference to a trial court's findings of fact especially when those findings are based on an evaluation of credibility and demeanor." *Id.* at 88. This decision does not alter the abuse of discretion standard, though it does clarify that the abuse of discretion standard does not necessarily apply to application of law to fact questions if their resolution does not turn on an evaluation of credibility and demeanor. *Id.* at 89. Because a trial court's evidentiary ruling generally does not involve

1. The Rule 403 issue resolved in part IB of our opinion on original submission was not briefed by the parties and was not an issue on which we granted review.

2. Both the District Attorney and the State Prosecuting Attorney filed motions for rehearing. The District Attorney also asked this Court to reconsider the holding on original submission that

upon request, the limiting instruction required by Rule 105 of the Texas Rules of Criminal Evidence must be given at the time the evidence is admitted. Because rehearing was not granted on that issue, this portion of our opinion on original submission remains unaffected by this supplemental opinion.

an "application of law to fact question" or a "mixed question of law and fact," cases addressing an appellate court's review of a trial court's evidentiary ruling remain unaffected by *Guzman*.

*Montgomery* sets the standard of review for evidentiary rulings. *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1990) (op. on reh'g). It defines relevant evidence, the admissibility of that evidence, and the trial judge's role in determining admissibility. Under *Montgomery*, to determine whether evidence is admissible a trial judge begins by asking whether the evidence is relevant. *Id.* at 386. As defined by Rule 401, "relevant" evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable then it could be without the evidence." TEX.R.CRIM. EVID. 401. If the evidence is relevant it is admissible so long as no constitutional provision, statute, or rule bars its admissibility. TEX.R.CRIM. EVID. 402.

### A. Rule 404(b)

■■■ Relevant evidence may not be admissible for every purpose. Rule 404(b) bars evidence of "other crimes, wrongs or acts" when that evidence is admitted for the purpose of proving "the character of a person in order to show that he acted in conformity therewith." TEX.R.CRIM. EVID. 404(b). This evidentiary rule incorporates the fundamental tenet of our criminal justice system that an accused may be tried only for the offense for which he is charged and not his criminal propensities. *Owens v. State*, 827 S.W.2d 911, 914 (Tex.Crim.App.1992). Evidence of other crimes, wrongs, or acts may, however, be admissible if it has relevance apart from its tendency to prove character conformity. TEX.R.CRIM. EVID. 404(b); *Montgomery*, 810 S.W.2d at 387. Consequently, if a defendant objects on the grounds that the evidence is not relevant, violates Rule 404(b), or constitutes an extraneous offense, the proponent must show that the evidence has relevance *apart from* showing character. *Id.* at 387.

If the trial court determines the evidence has no relevance apart from character conformity it is inadmissible. *Id.* If the proponent persuades the trial court that the evidence is admissible for some other permissible purpose, and that purpose "tends in logic and common experience to ... make the existence of a fact of consequence more or less probable than it would be without the evidence" the evidence is admissible. *Id.* at 391. The evidence is considered relevant if it:

> ... tends to establish some *elemental fact*, such as identity or intent; that it tends to establish some *evidentiary fact*, such as motive, opportunity or preparation, leading inferentially to an elemental fact; or that it rebuts a *defensive theory* by showing, e.g. absence of mistake or accident ... [or] that it is relevant upon a logical inference not anticipated by the rulemakers.

*Montgomery*, 810 S.W.2d at 387–88 [emphasis added].[3]

A trial court's admission of extraneous offense evidence is not reviewed *de novo* but under an abuse of discretion standard. *See Guzman*, 955 S.W.2d at 89. As long as the trial court properly admitted the evidence in light of the factors enunciated in *Montgomery* and the trial court's decision to admit the evidence lies "within the zone of reasonable disagreement" the decision will be upheld. *Montgomery*, 810 S.W.2d at 391.

### II.

■■ In his petition, appellant challenged the court of appeals' review of the admissibility of the extraneous offense evidence. Specifically, he contended that the court of appeals erred in holding that the evidence was automatically admissible as evidence of a common scheme or plan. This Court concluded that the appellate analysis was deficient because "[i]nstead of focusing on how the evidence was relevant to show a fact of consequence in this case, the court of appeals attempted to show how the evidence tended

---

3. The evidence will also be admissible if the proponent persuades the court that it is relevant upon a logical inference not anticipated by the rulemakers. This is the reason the list of "other purposes" designated in 404(b) is only an exemplary one and is "neither exclusive nor collectively exhaustive." *Montgomery,* 810 S.W.2d at 388.

to show a common scheme or plan." We concluded the court of appeals had not conducted a complete relevancy analysis and remanded the case.[4]

The State now contends that the issue before us on original submission was not the propriety of the analysis, but the correctness of the conclusion that the trial court did not abuse its discretion. The State also contends that, contrary to our decision on original submission, the court of appeals did address the relevancy of the common scheme or plan evidence and did not automatically admit the evidence. The State contends the court set out the appropriate case law and effectively addressed the relevancy of the evidence when it concluded the evidence was admissible to show that appellant used the horseback rides "as a tool to satisfy [appellant's] sexual desires" but as a means of "progressively exploit[ing] his authority and dominion over the girls[.]" *Rankin,* 872 S.W.2d at 283.

We believe the State is correct that the court of appeals properly examined the facts to determine whether the extraneous acts were admissible as evidence of a common scheme or plan, but this does not constitute an analysis of what "fact of consequence" this evidence was to go to prove. As emphasized in this Court's original opinion, "the mere fact that a party introduces evidence for a purpose other than character conformity, or any of the other enumerated purposes in Rule 404(b), does not, in itself, make that evidence admissible." Because the evidentiary rules admit only "relevant" evidence, the purpose for which the proponent wants to admit the extraneous offense must satisfy the definition of relevant evidence set out in Rule 401. *Montgomery,* 810 S.W.2d at 391. Extraneous offense evidence will generally always be relevant, but the permissible purpose for which the proponent is offering it may not be. For instance, where intent is a material issue and it is not inferable from the act itself, evidence of other acts probative of such intent is relevant and the trial court's decision to admit such evidence is proper.[5] Where the state's direct evidence, however, clearly shows the intent element of the crime and that evidence is uncontradicted by the defendant or not undermined by cross-examination of the state's witnesses, the offer of other crimes is unjustified due to the lack of relevancy.[6] Similarly, evidence tending to show that an alleged touching was not accidental or by mistake would not be relevant if the defendant has yet to make a claim of accident. *Prior,* 647 S.W.2d at 959.

It is for this reason that the proponent of 404(b) evidence must persuade the trial court that the extraneous offense evidence is being offered for a purpose other than character conformity, and that this other purpose "tend[s] to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R.Crim. Evid. 402. If the appellate court finds that the proffered evidence would not tend to make the existence of a material fact more or less probable, then the court must conclude that the trial court abused its discretion.[7] As stated in our original opinion,

4. Additionally, remand offered the court of appeals an opportunity to fully explain its Rule 403 determination. Part IB of our opinion on original submission was not necessary in light of our decision to remand this case back on the 404(b) issue. *See* discussion *infra.*

5. *Morgan v. State,* 692 S.W.2d 877, 880 (Tex. Crim.App.1985); *Prior v. State,* 647 S.W.2d 956, 959 (Tex.Crim.App.1983); *see also Lane v. State,* 933 S.W.2d 504 (Tex.Crim.App.1996) (extraneous offense may be admissible to show *identity* only when *identity* is issue in the case).

6. *See e.g., Pavlacka v. State,* 892 S.W.2d 897 (Tex.Crim.App.1994)(though victim's testimony was impeached on cross-examination testimony of other molestations allegedly committed by the defendant were not admissible to rehabilitate

complainant because the testimony did not render the victim any more credible); *Montgomery,* 810 S.W.2d at 397 (prerequisite for admission of extraneous evidence to shore up a child complainant's testimony is that the defendant must first deny the act or undermine or impeach the complainant is some way).

7. *Montgomery,* 810 S.W.2d at 391 (admission of extraneous acts was abuse of discretion because State had no compelling need for the evidence either to prove specific intent or to shore up testimony of witnesses); *Owens,* 827 S.W.2d at 916 (concluding extraneous offense evidence should not have been admitted in prosecution for aggravated sexual assault of child where only ultimate fact to be resolved by jury was whether criminal offense occurred as alleged by complainant).

because it is not for this Court to make findings as to relevancy in the first instance, we remand this case to the court of appeals.

### III. Rule 403

The State also contends that we should not have resolved the Rule 403 issue because appellant did not raise the issue in his brief and it was not a ground on which this Court granted review. After re-examining part IB of this Court's original opinion we are in agreement with the State. We find that a Rule 403 analysis was premature once this Court decided to remand the case for the court of appeals to address the relevancy of evidence establishing a common scheme or plan. The relevancy of the evidence admitted under 404(b) is crucial to determining whether the probative value of the evidence is outweighed by its prejudicial effect. Therefore, it was premature for us to perform a Rule 403 balancing test before the court of appeals had an opportunity to pass on whether it was reasonable for the trial court to find the evidence relevant. For instance, in the absence of a disputed issue the offer of other crimes evidence may be seen as merely prejudicial. *Robinson v. State,* 701 S.W.2d 895, 898 (Tex.Crim.App. 1985) ("where there is little or no controverting evidence offered by a defendant ... use of an extraneous offense is unnecessary and offers virtually no probative value").[8]

For the foregoing reasons, part IB of our opinion on original submission is withdrawn. This case is remanded to the court of appeals for it to consider whether the extraneous offense testimony is relevant to a fact of consequence. If the court of appeals finds this evidence to be relevant, it should then perform a Rule 403 balancing test. If the court finds the evidence admissible under Rule 403, it should conduct a harm analysis

of the court's error in failing to give a timely limiting instruction.

The judgment of the court of appeals is vacated and the cause remanded for that court to address the above issues in a manner consistent with this Court's opinion on original submission and this opinion on rehearing.

KELLER, J., filed a concurring opinion, in which McCORMICK, P.J., MANSFIELD, and WOMACK, JJ., joined.

KELLER, Judge, concurring on motion for rehearing.

The majority remands this cause to the court of appeals in order for it to determine whether the evidence of extraneous acts was relevant. If the court finds that it was, it is to perform a Rule 403 balancing test and then, if necessary, decide whether the failure to give a limiting instruction at the time the evidence was admitted was harmless. I find myself in disagreement with the reasoning in Part II of the opinion.

In Part II, the majority espouses two propositions with which I disagree: (1) that the Court of Appeals must articulate how a common scheme or plan would be relevant to a fact of consequence in the case, and (2) that an extraneous offense is not relevant if the State does not need the evidence. The majority opinion suggests that a conclusion that certain evidence is relevant to show a common scheme or plan is insufficient to establish that evidence's relevance to the criminal prosecution. But evidence of a common scheme or plan is relevant to show intent. While intent is not an element of every prosecution, it is an element of this one; hence, the Court of Appeals adequately addressed the relevance of the extraneous offenses

---

8. In *Montgomery,* we set out the following useful analysis of this factor:

> Therefore we hold that where relevant criteria, viewed as objectively as possible, lead to the conclusion that the danger of unfair prejudice substantially outweighed the probative value of the proffered evidence, the appellate court should declare that the trial court erred in failing to exclude it. Relevant criteria gleaned from the authorities include, *inter alia,* that the ultimate issue was not seriously contested

> by the opponent; that the State had other convincing evidence to establish the ultimate issue to which the extraneous misconduct was relevant; that the probative value of the misconduct evidence was not, either alone or in combination with other evidence, particularly compelling; that the misconduct was of such a nature that a jury instruction to disregard it for any but its proffered purpose would not likely have been efficacious.

*Montgomery,* 810 S.W.2d at 392–93.

when it concluded that they tended to show a common scheme or plan.

As for the second proposition, I believe that the threshold determination of relevancy is not affected by the State's relative need (or lack thereof) for the evidence. Even if in some cases it is true, as we said in *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim. App.1990) (opinion on rehearing), that determining relevance is not exclusively a function of rule and logic, I think that in most cases it will be just that. It does not take much for evidence to be relevant—it need only have *any tendency* to make a fact of consequence more or less *probable*. Whether the State needs the evidence does not affect the logical relation between the extraneous act and the nonconformity purpose at issue, although it may well affect whether the probative value of such evidence is substantially outweighed by its prejudicial effect. Hence, whether the State needs the evidence is not a consideration under Rule 404 but under Rule 403.

At least some of the cases cited by the majority seem to support my position. In *Morgan v. State*, 692 S.W.2d 877, 880 (Tex. Crim.App.1985), a case involving admissibility of extraneous acts of sexual assault of children, the court disposed of the relevance issue thus, "[W]here intent or guilty knowledge is an essential element of the offense which the State must prove to obtain a conviction, its materiality goes without saying." The disputed question involved the admissibility of the evidence, but not its relevance. *Prior v. State*, 647 S.W.2d 956 (Tex.Crim. App.1983), similarly, discussed the admissibility of extraneous acts when intent was established by testimony about the offense itself. There is not in that case, however, the slightest suggestion that the extraneous acts were irrelevant.

So when the majority says that "evidence tending to show that an alleged touching was not accidental or by mistake would not be relevant if the defendant has yet to make a claim of accident," I disagree. It is relevant because it has a tendency to make a fact of consequence (intent) more probable. Such evidence may be inadmissible under Rule 403, but it is not irrelevant.

As I believe the Court of Appeals adequately addressed the relevancy of the evidence under Rule 404(b), I would not remand for consideration on that issue. I dissent to Part II and otherwise join the opinion of the Court.

McCORMICK, P.J., and MANSFIELD and WOMACK, JJ., join.