COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

WESLEY ALLEN MILLER,                                 )

                                                                              )              
No.  08-04-00053-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
384th District Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20030D02148)

                                                                              )

 

 

O
P I N I O N

 

Appellant Wesley
Allen Miller appeals his convictions for aggravated sexual assault of a child,
sexual assault of a child, and two counts of indecency with a child.  Having found Appellant guilty of several
charges, the jury assessed punishment at 15 years=
imprisonment for the aggravated sexual assault of a child offense, 15 years= imprisonment for the sexual assault of
a child offense, and 6 years=
imprisonment for each count of indecency with a child.  The trial court sentenced Appellant to the
same, with all the sentences to run concurrently.  On appeal, Appellant raises two issues, in
which he argues:  (1) the trial court
erred in allowing the State to present extraneous offense evidence that was
more prejudicial to Appellant than it was probative; and (2) the trial court
erred in failing to grant his request for a limiting instruction after the  extraneous offense information was allowed
into evidence.  We affirm.








Kimberly Dean and
Appellant met in North Carolina in 1995. 
At that time, Ms. Dean had three minor daughters, K.D., B.D., and P.M.,
and Appellant had two minor daughters. 
At some point, Ms. Dean and Appellant married each other and their
blended family moved to El Paso in 1998. 
In November 2001, Ms. Dean woke up one morning to find Appellant sitting
in the living room on the couch with an erection.  Her daughter, K.D., was standing in front of
Appellant with a towel draped around her shoulders and her underwear down to
her knees.  Ms. Dean told her daughter to
get dressed and asked Appellant what was going on.  Appellant told her that K.D. had a bad
attitude and that he was going to spank her. 
Appellant also explained that he had an erection because it was first
thing in the morning and he had to go to the bathroom.  Ms. Dean did not notify the authorities, but
instead sought counsel with her pastor. 
The pastor advised Ms. Dean to sit down and discuss the matter with
K.D, but Ms. Dean did not do so.  Ms.
Dean explained that she put it out of her mind because by January Appellant had
made a confession of faith and had been saved. 


Ms. Dean, however,
became concerned when she noticed that her daughters=
behavior towards Appellant had seemed to change.  They started to pull away from him and K.D.,
in particular, did not want to hug Appellant, did not want to be around
Appellant, and did not want to be left alone in the house with Appellant.  In February 2003, Ms. Dean had a conversation
with B.D. in which she asked her daughter if she had ever seen Appellant naked,
if he had ever touched her, and if he had ever made her touch him.  On February 28, Ms. Dean contacted the police
in response to their conversation.  








Detective Mario
Chairez of the El Paso Police Department, formerly with the Crimes Against
Children section, testified that he met with Appellant on February 28, 2003 in
the course of investigating an allegation of sexual abuse.  After Appellant was informed of his Miranda
rights, he gave the police statement, which was admitted into evidence at
trial.  In the statement, Appellant
admitted to having had his stepdaughters K.D. and B.D. each hold his erect
penis in their hands on separate occasions. 
Appellant stated that he had K.D. hold his penis twice and had B.D. hold
it once.  Appellant denied ever touching
either girls=
vaginas.  Appellant also stated that at
the time the incidents occurred, he was under the influence of cocaine and had
not yet been saved.

At the time of the
trial, B.D. was fourteen years old, but she testified that all the events that
happened between her and Appellant occurred when she was ages twelve and
thirteen.  B.D. stated that Appellant is
her stepfather, but she no longer calls him Adad@ because he hurt her by touching her
and is no longer in her life.  According
to B.D., one evening, after she got ready for bed she walked into the living
room to kiss and hug Appellant good night. 
Her sisters were already asleep and her mother was out at a Bible
study.  Appellant asked her to rub lotion
on him and B.D. returned with lotion. 
Appellant took his penis out of his shorts and asked her to rub lotion
on it.  B.D. then moved her hands back
and forth on Appellant=s
penis as he had instructed her to do. 
When B.D. stopped, Appellant began rubbing lotion on her left leg
without her permission.  They were both
sitting on the couch.  Appellant then
moved his hand up her leg and told her to lean back on the couch.  Appellant moved his hand up to B.D.=s thigh and then inserted his finger
into her vagina.  After a minute or so,
Appellant continued to apply lotion to B.D.=s
right leg.  When he finished applying the
lotion, B.D. put the lotion away and said good night.








Pursuant to
Article 38.37 of the Texas Code of Criminal Procedure, the trial court
permitted B.D. to testify to two sexual incidents that occurred between her and
Appellant while they lived together in El Paso. 
On one occasion, Appellant called B.D. into his home office and when she
walked into the office she saw that he had his pants unzipped and his underwear
was showing.  Appellant asked B.D. if she
liked lollipops and B.D. replied Ano,
not really.@  Appellant then took his penis out of his
underwear and told her to put it in her mouth and suck it like a lollipop.  B.D. just stood there and when Appellant
asked her what was wrong, she told him she was scared.  Appellant asked her Awhy@ and she told him AI don=t
know.@  Appellant then left and went into the kitchen
to cook breakfast.  B.D. also recalled
another incident in which she woke up one night to find Appellant in her bed
fondling her breasts.

Sixteen-year-old
K.D., Appellant=s other
stepdaughter, also testified at the trial. 
According to K.D.=s
testimony, on one occasion, Appellant called her into the computer room after
dinner.  Appellant was sitting in a chair
and K.D. was standing.  Appellant pulled
her panties out of the way and inserted his finger into her vagina.  K.D. also stated that on at least two
occasions, Appellant made her touch his penis. 
She remembered that he had pulled his penis out of his pants and had
told her to rub it.  K.D. complied with
Appellant=s
request.  K.D. also testified that on
another occasion, Appellant told her to pull up her shirt and her bra and then
he fondled her breasts.  K.D. stated that
all of these incidents occurred while she was living with Appellant in El Paso.

In Issue One,
Appellant complains that the trial court erred by admitting extraneous offense
evidence that was more prejudicial to Appellant than it was probative.  Specifically, Appellant contends that
testimony from B.D. and Ms. Dean about certain extraneous acts was unfairly
prejudicial and served only to inflame the jury.








B.D.=s Extraneous Offense Testimony

Appellant first
argues that the trial court abused its discretion in admitting B.D.=s extraneous offense testimony because
there was already sufficient evidence of her relationship to Appellant and
sexual incidents between her and Appellant, thus this extraneous offense
evidence only served to inflame the jury. 
At trial, the State sought to admit the extraneous offense evidence
pursuant to Article 38.37.[1]  The State approached the bench prior to
eliciting this evidence during B.D.=s
testimony.  Appellant objected on grounds
that such evidence would inflame the jury. 
The trial court granted Appellant=s
request for a hearing outside the jury=s
presence on the testimony to be offered and then determined it was
admissible.  

Standard
of Review

The trial court
has wide discretion in deciding whether to admit or exclude evidence of
extraneous offenses.  Montgomery v.
State, 810 S.W.2d 372, 390-93 (Tex.Crim.App. 1990)(Op. on reh=g). 
We review the trial court=s
ruling for an abuse of discretion.  Id.  As long as the trial court=s ruling is within the zone of
reasonable disagreement, an we will not reverse that ruling.  Id. 


Admissibility
under Article 38.37








The State, as the
proponent of the extraneous offense evidence, bore the burden of showing its
admissibility.  See Rankin v. State,
974 S.W.2d 707, 718 (Tex.Crim.App. 1996)(Op. on reh=g).  With certain exceptions, extraneous offenses
are not admissible to prove the defendant=s
character in order to show that the defendant acted in conformity with his
character by committing the charged offense. 
See Tex.R.Evid.
404(b).  In order for an extraneous offense
to be admissible, it must be relevant apart from supporting an inference of
character conformity.  See Montgomery,
810 S.W.2d at 387; Tex.R.Evid.
401.  An extraneous offense has
non-character conformity relevance if it has any tendency to make the existence
of a fact that is of consequence to the determination of the action more or
less probable than it would be without the evidence.  Tex.R.Evid.
401; Powell v. State, 63 S.W.3d 435, 438 (Tex.Crim.App. 2001).

Under Article
38.37 of the Texas Code of Criminal Procedure, notwithstanding Rules 404 and
405, extraneous offense evidence is admissible in trials involving certain
offenses committed against a child under seventeen years of age for its bearing
on relevant matters, including:  (1) the
state of mind of the defendant and the child; and (2) the previous and
subsequent relationship between the defendant and the child.  See Tex.Code
Crim.Proc.Ann. art. 38.37, ''
1, 2 (Vernon 2005).  Extraneous offense
evidence which is admissible under Article 38.37 may, however, be excluded
under Rule 403 Aif its
probative value is substantially outweighed by the danger of unfair prejudice, confusion
of the issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence.@  See Tex.R.Evid.
403; Tex.Code Crim.Proc.Ann. art.
38.37, ' 4;
Ernst v. State, 971 S.W.2d 698, 700 (Tex.App.--Austin 1998, no pet.).  There is a presumption that relevant evidence
is more probative than prejudicial.  See
Montgomery, 810 S.W.2d at 389.








In reviewing the
trial court=s Rule
403 balancing-test determination, a reviewing court is to reverse the trial
court=s ruling Ararely and only after a clear abuse of
discretion.@  Mozon v. State, 991 S.W.2d 841, 847
(Tex.Crim.App. 1999), quoting Montgomery, 810 S.W.2d at 389.   Factors employed in balancing the
prejudicial and probative value of an extraneous offense under Rule 403 are:  (1) how compellingly the extraneous offense
evidence serves to make more or less probable a fact of consequence-- a factor
which is related to the strength of the evidence presented by the proponent to
show the defendant in fact committed the extraneous offense; (2)  the potential the other offense evidence has
to impress the jury A>in some irrational but nevertheless
indelible way=@; (3) the time the proponent will need
to develop the evidence, during which the jury will be distracted from
consideration of the indicted offense; and (4) the force of the proponent=s need for this evidence to prove a
fact of consequence, i.e., does the proponent have other probative evidence
available to him to help establish this fact, and is this fact related to an
issue in dispute.  Mozon, 991
S.W.2d at 847; Montgomery, 810 S.W.2d at 389-90.  








B.D.=s testimony concerning the two sexual
encounters between her and Appellant-- one in which he asked her to suck his
penis and the other in which B.D. awoke to find Appellant in her bed fondling
her breasts--were highly probative of both Appellant=s
intent to engage in the charged offenses and the states of mind of Appellant
and B.D.  Further, the extraneous offense
testimony compellingly showed the peculiar relationship that had developed
between Appellant and B.D. and her fear of Appellant, which helped to explain
why B.D. was compelled to acquiesce. 
While B.D.=s
extraneous offense testimony had the potential to impress the jury, it was not
so prejudicial as to affect the jury to act in an irrational manner or to make
the jury find Appellant guilty on an improper basis.  With regard to the third factor, we note that
the State spent only a small amount of time developing the extraneous offense
testimony.  Lastly, the State needed this
evidence in order to show Appellant=s
misuse of parental authority and the manner in which he achieved dominance over
B.D. in the family home.  In light of
these factors, we find that the trial court did not abuse its discretion in
concluding that the probative value of this extraneous offense evidence was not
substantially outweighed by any prejudicial effect.

Request
for Mistrial

Within his first
issue, Appellant also complains that the trial court erred in denying his
request for a mistrial with respect to Ms. Dean=s
remark that Appellant Ahad
been violent in the past.@  At trial, Appellant objected to Ms. Dean=s mention of an extraneous offense
without notice and the trial court sustained his objection.  Appellant requested an instruction to the
jury and a mistrial.  The trial court
granted the request for an instruction and instructed the jury to disregard Ms.
Dean=s last
statement.  The court, however, denied
Appellant=s request
for a mistrial.  On appeal, Appellant
claims the instruction was not sufficient to cure the damage done to him by
mention of other extraneous acts.

A trial court=s denial of a motion for mistrial is
reviewed under an abuse of discretion standard. Wood v. State, 18 S.W.3d
642, 648 (Tex.Crim.App. 2000).  A prompt
instruction to disregard usually cure error, even in situations involving
improper introduction of an extraneous offense. 
See Ovalle v. State, 13 S.W.3d 774, 783 (Tex.Crim.App.
2000).  When the trial court instructs a
jury to disregard, we presume the jury follows the trial court=s instructions.  See Waldo v. State, 746 S.W.2d 750,
753 (Tex.Crim.App. 1988).  A mistrial is
only required when the improper question or reference is Aclearly prejudicial to the defendant
and is of such character as to suggest the impossibility of withdrawing the
impression produced on the minds of the jurors.@  Wood, 18 S.W.3d at 648.








Reviewing error
pursuant to the harmless error rule and efficacy of curative instructions, we
may consider the following factors:  (1)
the nature of the error; (2) the persistence of the prosecution in committing
the error; (3) the flagrancy of the violation; (4) the particular instruction
given; (5) the weight of incriminating evidence; and (6) the harm to the
accused as measured by severity of the sentence.  See Waldo, 746 S.W.2d at 754.  We first observe that Ms. Dean=s reference to an extraneous offense
was vague and isolated, was not solicited by the State, and was never
emphasized to the jury.  The trial court
promptly instructed the jury to disregard the remark and there was no other
mention of the referenced extraneous offense. 
After reviewing the record, we conclude the instruction sufficiently
cured any error arising from Ms. Dean=s
reference.  Thus, the trial court did not
abuse its discretion in denying the motion for mistrial.[2]  Issue One is overruled.

In Issue Two,
Appellant argues that the trial court erred in failing to grant his request for
a limiting instruction after extraneous offense information was allowed into
evidence.  Rule 105 of the Texas Rules of
Evidence requires a limiting instruction, upon proper request, when evidence is
admitted for one purpose but is not admissible for another purpose.  See Tex.R.Evid.
105(a); see also Rankin, 974 S.W.2d at 712.  Once a limiting instruction regarding
extraneous offense is requested, the trial court is required to give the requested
instruction.  See Ex Parte
Varelas, 45 S.W.3d 627, 632 (Tex.Crim.App. 2001).  The request for a limiting instruction,
however, must be specific and timely.  Wilson
v. State, 7 S.W.3d 136, 144 (Tex.Crim.App. 1999).  








The record in this
case shows that Appellant failed to request a limiting instruction timely.  Appellant did not request a limiting
instruction after B.D. testified to the extraneous offenses.  Defense counsel conducted extensive
cross-examination of the witness, including questioning B.D. about one of the
alleged extraneous offenses.  The request
for an instruction occurred after B.D. had been excused as a witness, thus the
request was not timely.[3]  Because Appellant failed to make a timely
request, the evidence was admitted for all purposes and Appellant was not later
entitled to a limiting instruction.  See
Hammock v. State, 46 S.W.3d 889, 895 (Tex.Crim.App. 2001)(when a party does
not request a limiting instruction at the first opportunity, evidence is
admitted for all purposes). 
Consequently, Appellant has not preserve any error with regard to the
trial court denying his untimely request for a limiting instruction.  Issue Two is overruled.

We affirm the
trial court=s
judgment.

 

 

August
4, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
Article 38.37 requires that upon timely request, the State must give notice of
its intent to introduce Article 38.37 extraneous offense evidence.  See Tex.Code
Crim.Proc.Ann. art. 38.37, '
3 (Vernon 2005).  In this case, a request
for notice was made and the State gave Appellant notice of its intent to offer
extraneous offenses under Article 38.37. 
Appellant did not contest that proper notice had been given before
trial.





[2]
Within Issue One, Appellant also complains that the trial court erred in
allowing Ms. Dean to testify about another extraneous offense, the
incident she observed between Appellant and K.D. in the living room.  Appellant, however, did not raise an
objection to this particular testimony and thus, has failed to preserve any
error.  See Tex.R.App.P. 33.1(a)(1)(A).





[3]
The trial court denied Appellant=s
request for a limiting instruction, but placed a limiting instruction in the
charge.  We note that limiting
instructions given for the first time during the jury charge do not constitute
an efficacious application of Rule 105(a) because limiting instructions, when
properly requested, are most effective when given simultaneously with the
relevant evidence.  Rankin, 974
S.W.2d at 712.